## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

---

DENISE JOHNSON,

                                        Plaintiff,

                                                        DECISION AND ORDER

                    -vs-

                                                        13-CV-6319-CJS

CAROLYN W. COLVIN, Acting Commissioner of
Social Security,[1]

                                        Defendant.

---

### APPEARANCES

For Plaintiff:                          Christopher M. Mesh, Esq.
                                        Connors & Ferris, LLP
                                        3445 Winton Place
                                        Suite 112
                                        Rochester, NY 14623
                                        (585) 262-2667

For Defendant:                          Mary C. Kane, A.U.S.A.
                                        United States Attorney's Office
                                        Federal Centre
                                        138 Delaware Avenue
                                        Buffalo, NY 14202
                                        (716) 843-5809

### INTRODUCTION

   **Siragusa, J.** Plaintiff Denise Johnson brings this action pursuant to the Social

Security Act, (codified in relevant parts at 42 U.S.C. § 401 *et. seq.* and 42 U.S.C. § 1381

*et. seq.*) claiming that Defendant Commissioner of Social Security ("Commissioner")

improperly denied her application for benefits under Title II and Title XVI of the Act.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted, Michael J. Astrue as the defendant in this suit.

Specifically, Plaintiff alleges that the decision of an Administrative Law Judge ("ALJ") denying her benefits was erroneous and not supported by the substantial evidence contained in the record, or was contrary to law. She seeks a reversal of that decision and a remand only for calculation of benefits. The Commissioner cross-moves for judgment on the pleadings, seeking affirmation of his determination. For the reasons stated below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

## BACKGROUND

### *Procedural History and Factual Background*

Plaintiff was born in 1959. R. 173. She earned a General Educational Development (GED®)[2] diploma in 1977, did not attend special education classes, and has not completed any type of specialized job training, trade, or vocational school. R. 191.

By application dated May 10, 2010, Plaintiff filed for Disability benefits under Title II. Previously, on April 23, 2010, she filed an application under Title XVI for Supplemental Security Income benefits. R. 66. For both applications, she listed the date on which her disability started as December 1, 2009. The applications were initially denied on July 14, 2010, and Plaintiff pursued a hearing before an ALJ, which hearing was held on July 28, 2011. Plaintiff appeared in Rochester, New York, and the ALJ was connected to her via video conference from Baltimore, Maryland. At the hearing a Vocational Expert ("VE") also testified via a telephone connection.

On August 10, 2010, the ALJ issued a decision denying Plaintiff's applications, finding at the fourth sequential step that she was not disabled, and that she was able to

---

[2] *See* What is the GED test? at GED Testing Services, available at http://ged.com (last checked Apr. 2, 2014).

perform two of her past jobs: pharmaceutical package inspector, and camera inspector. Plaintiff appealed, but on April 25, 2013, the Appeals Council denied her review, making the ALJ's decision the Commissioner's final decision.

### The ALJ's Findings

The ALJ determined that Plaintiff met the coverage requirements under the Act through March 31, 2010, and that she had not engaged in any gainful employment since December 1, 2009. R. 68. He determined she suffered from the following severe combination of impairments: degenerative disc disease, lumbar radiculitis[3] and pain disorder and that those impairments imposed more than a minimal limitation on Plaintiff's ability to perform basic work activities and were expected to last more than twelve continuous months. *Id.* He also determined that despite those severe impairments, Plaintiff did not meet the requirements of Listing 1.04 because she did not have evidence of nerve root compression, or spinal arachnoiditis,[4] or lumbar spinal stenosis[5] resulting in pseudo-claudication.[6] R. 4.

The ALJ found that Plaintiff had the residual functional capacity to lift and carry at the sedentary exertional level, and the capacity to stand and walk at the light exertional

---

[3] "1. Inflammation of the intradural portion of a spinal nerve root prior to its entrance into the intervertebral foramen. 2. Inflammation of the portion of a spinal nerve root between the intervertebral foramen and the nerve plexus." The American Heritage® Medical Dictionary Copyright © 2007, 2004 by Houghton Mifflin Company. Published by Houghton Mifflin Company.

[4] "Arachnoiditis describes a pain disorder caused by the inflammation of the arachnoid, one of the membranes that surround and protect the nerves of the spinal cord." National Institute of Neurological Disorders and Stroke, Arachnoiditis, available at http://www.ninds.nih.gov/ (last checked Apr. 2, 2014).

[5] "Spinal stenosis is a narrowing of the open spaces within your spine, which can put pressure on your spinal cord and the nerves that travel through the spine." Mayo Clinic, Diseases and Conditions, Spinal stenosis, available at http://www.mayoclinic.org/ (last checked Apr. 2, 2014).

[6] "Pseudoclaudication is a result of narrowing of the lumbar spinal canal (lumbar spinal stenosis). This puts pressure on the spinal nerve roots, which control movement and sensation in the lower limbs." *Id.* at "What is the difference between claudication and pseudoclaudication?"

level. He also found that she must be allowed the option to alternate between sitting and standing positions at will throughout the workday and is precluded from repetitive bending or twisting and limited to no more than occasional pushing and pulling or overhead reaching with her upper extremities. R. 69. In assessing Plaintiff's credibility, the ALJ concluded that "Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms are not credible to the extent that they are inconsistent with [the ALJ's] residual functional assessment." He further concluded that Plaintiffs treating physicians, Dr. Clifford Everett and Dr. Clifford J. Ameduri, both found that she was "limited to essentially the sedentary exertional category." R. 70.

After hearing testimony from the VE, the ALJ determined that plaintiff was capable of performing her past relevant work as a pharmaceutical packaging inspector *as actually performed* and as a camera inspector, also *as actually and normally performed*.

## DISCUSSION

### Jurisdiction and Scope of Review

Title 42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v NLRB*, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. *See*, *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court

does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating the plaintiff's claim.

### Plaintiff's Claims of Error

Plaintiff claims that the ALJ's decision to deny benefits was not based upon substantial evidence and that the ALJ committed errors of law. As to the latter, Plaintiff contends that the ALJ erred by allowing telephonic testimony from the VE, by failing to adhere to the treating physician rule, by failing to properly assess her credibility, by failing to fully develop the record, and by failing to properly apply the medical-vocational guidelines. Finally, Plaintiff maintains that, since the ALJ stopped at step four in the sequential analysis and failed to go forward and meet his burden at step five, this Court should reverse the ALJ's decision and remand the case for the calculation of benefits. The Court will address each of these contentions, below.

### Telephonic Testimony from the VE

Plaintiff argues that the ALJ's determination to allow the VE to testify by telephone was in clear violation of HALLEX I-2-5-30 and *Ainsworth v. Astrue*, No. 09-cv-286-sm, 2010 U.S. Dist. LEXIS 60686 (D.N.H. Jun. 17, 2010).[7] HALLEX refers to the Social Security Administration's Hearings, Appeals, and Litigation Law Manual, which is available at http://www.ssa.gov/OP_Home/hallex/hallex.html (last checked Apr. 1, 2014). The relevant portion of that manual provides as follows: "The preferred method for obtaining ME or VE opinion is through in-person testimony or testimony taken via telephone or

---

[7] Plaintiff's counsel's citation to this case as "09 CV 286 (U.S. Dist. Lexis 60686)" did not permit the Court to easily find the case. Pl.'s Mem. of Law at 2, Feb. 24, 2014, ECF No. 9. Counsel's citation lacked the year decision in the jurisdiction issued that decision. After extensive search, the Court determines that counsel's intent was to cite to the case listed above.

video teleconference at a hearing." Here, Plaintiff relates that the testimony from the VE

was taken by telephone. The ALJ's decision to allow the VE to testify by telephone is in

compliance with that rule. With regard to the case cited, the district court concluded:

> Here, whether the practice of accepting expert testimony by telephone is or
> is not authorized by the governing regulations, remand is required. The
> circumstances presented in this case, viewed as a whole, counsel strongly
> in favor of remanding the matter so: (1) the ALJ can obtain the required
> expert medical testimony in an appropriate manner; (2) a complete record
> of that testimony can be prepared for use on appeal; and (3) the bases of
> those critical expert medical opinions will be discernible.

*Ainsworth*, 2010 U.S. Dist. LEXIS 60686 at 12–13. Plaintiff's cited case does not support

her conclusion that the ALJ erred by allowing the VE to testify by telephone. Plaintiff also

cites to the Code of Federal Regulations, which at the time of this hearing, mentioned only

"in person" or "video teleconferencing" as means by which a person could appear at a

hearing. The rule has subsequently been amended to include appearance by telephone

(effective June 20, 2013). 20 C.F.R. § 404.950 (May 21, 2013). A full discussion of the

change is contained in the Federal Register. 78 F.R. 29624 (May 21, 2013). The Court is

not convinced that the ALJ's decision here to allow the VE to testify by telephone com-

promised Plaintiff's rights. The change in the appearance rules was aimed at parties to

the case, not an expert witness like the VE. *See* 72 F.R. 61218 (Oct. 29, 2007) ("Our

proposed rule also differs from the current rule by providing that the ALJ may direct the

individual who requested the hearing to appear at the hearing by telephone under ex-

traordinary circumstances where appearing in person is not possible and video teleconf-

ference is not available. For example, an ALJ may direct an individual who is incarcerated

to appear at the hearing by telephone if the facility in which the individual is incarcerated

will not allow a hearing to be held at the facility and the facility does not have video tel-

econference technology. The proposed rule also provides that, if the individual who re-quested the hearing objects to any other person appearing by telephone, the ALJ could overrule the objection."). In this case, Plaintiff appeared by video teleconference, so the ALJ could both see and hear her and was better able to assess her testimony.

The VE's testimony was factual and based on records, thus his appearance by telephone only was not a significant disadvantage to the hearing process. With regard to the occasions when the VE asked for a repetition of counsel's question, and stated, "I did not hear that," the Court is unpersuaded that these facts indicated the VE was having difficulty hearing the proceedings. In the first instance, counsel's question was complex in the VE asked for repetition of it. In the second instance, the Court interprets the VE's comment "I did not hear that," to mean that the VE contended that Plaintiff did not testify as counsel had represented to him. Consequently, the Court finds that the ALJ's decision to permit the VE to testify via telephone did not compromise Plaintiff's rights. *See Hepp v. Astrue*, 511 F.3d 798, 805 (8th Cir. 2008) ("we do not believe that, in a non-adversarial proceeding, an in-person cross-examination would significantly increase the accuracy of determining a witness's credibility over that of a telephone cross-examination.").

### *Development of the Record*

Plaintiff also contends that the ALJ fails to fully develop the disability record and, for that reason, the matter should be remanded. The Court disagrees. Although Plaintiff correctly sets out the standards that govern the ALJ's responsibility to fully develop the record "when the evidence is insufficient to determine disability," Pl.'s Mem. of Law at 14, she wholly fails to identify any deficiency in this record in this case. Therefore, Plaintiff presents no basis for requiring that the case be remanded for further development of the

record.

### Assessment of Plaintiff's Credibility

Plaintiff argues that the ALJ "improperly determined that the Plaintiff was not disabled solely based on his observation at the hearing." Pl.'s Mem. of Law at 15. The Second Circuit discussed the Commissioner's responsibility to make credibility determinations, writing:

> It is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms. *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). Social Security regulations provide a two-step process for evaluating symptoms such as pain, fatigue, shortness of breath, weakness, or nervousness. First, the ALJ must determine whether the medical signs or laboratory findings show that a claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. If so, the ALJ "must then evaluate the intensity and persistence of [the claimant's] symptoms" to determine the extent to which the symptoms limit the claimant's capacity for work. 20 C.F.R. § 416.929(c)(1). The ALJ is required to consider all available evidence, including the claimant's history, medical signs and laboratory findings, and statements from the claimant, the claimant's treating or nontreating source, or other persons about how the symptoms affect the claimant. *Id.* Objective medical evidence is useful, but the ALJ will not reject statements about the intensity and persistence of pain and other symptoms "solely because the available objective medical evidence does not substantiate [the claimant's] statements." *Id.* § 416.929(c)(2). However, if a claimant's statements about his or her symptoms are not substantiated by the objective medical evidence, the ALJ must consider the other evidence and make a finding on the credibility of the individual's statements. See SSR 96-7p, 1996 SSR LEXIS 4, 1996 WL 374186, at *4 (July 2, 1996). In doing so, the ALJ should consider:
>
> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [the claimant's] pain or other symptoms;
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s]

received for relief of [the claimant's] pain or other symptoms;
(vi) Any measures [the claimant] use[s] or ha[s] used to relieve pain or
other symptoms . . . ; and
(vii) Other factors concerning [the claimant's] functional limitations and
restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3). The ALJ's decision "must contain specific rea-
sons for the finding on credibility, supported by the evidence in the case
record, and must be sufficiently specific to make clear to the individual and
to any subsequent reviewers the weight the [ALJ] gave to the individual's
statements and the reasons for that weight." SSR 96-7p, 1996 SSR LEXIS
4, 1996 WL 374186, at *2. While it is "not sufficient for the [ALJ] to make a
single, conclusory statement that" the claimant is not credible or simply to
recite the relevant factors, 1996 SSR LEXIS 4, [WL] at *2, remand is not
required where "the evidence of record permits us to glean the rationale of
an ALJ's decision," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir.
1983).

*Cichocki v. Astrue*, 534 Fed. Appx. 71, 75–76 (2d Cir. 2013).

Here, the ALJ found that the medically determinable impairments could reasonably
be expected to cause certain of the alleged symptoms she reported. R. 69–70. However,
he went on to describe in detail why he concluded that her reports as to the degree of pain
she experienced were not supported by the credible evidence. Although he noted that
Plaintiff underwent physical therapy and epidural injections without substantial relief,
nevertheless, he accurately observed that "[n]o treating or examining medical source has
opined that the claimant is more limited than determined [by the ALJ]." R. 70. He further
stated that although back surgery was recommended on numerous occasions, she has
consistently declined it. When the ALJ asked her about it the hearing, Plaintiff said she
was afraid to undergo surgery because "I hear too many things about this back surgery.
And the people saying that what you have one, you have got to have this. And I have
never been caught on and I just figure I will just go on out with this pain." R. 38. The ALJ
further observed that "Dr. Ameduri reported that he did not feel the claimant should go on

narcotic pain medication... [and] also remarked on an examination that he did not think the claimant was giving 'maximal volitional effort.'" R. 70. He further remarked that "Dr. Michael Kuttner noted that the claimant did not exhibit pain behavior commensurate with her reported pain level . . . ." The ALJ also noted that Plaintiff "engaged in a significant variety of activities of daily living during the period of her claim for disability, including attending the computer class 3 to 4 times weekly...." R. 70. However, Plaintiff testified that she did not finish the computer class because she could not sit, R. 36, elaborating that sitting in one position for more than about fifteen minutes makes her stiff, R. 26.

In his assessment of Plaintiff's credibility, the ALJ considered her daily activities, location, duration, frequency, and intensity of her pain, medications she was taking, possible treatment other than medication to relieve the pain, procedures utilized by Plaintiff to relieve the pain, and her activities of daily living and social engagements. Consistent with the ALJ's conclusion that Plaintiff was exaggerating her pain is a report dated January 25, 2011, by Michael J. Kuttner, PhD, clinical psychologist. Dr. Kuttner, related that Plaintiff rated her low back pain as a ten out of ten "with ten equal [to] one's hands in boiling oil. She rated her pain as 10/10 on interview and exhibited *no commensurate pain behavior*." R. 273 (emphasis added).

After reviewing the record, the Court concludes that the ALJ adequately followed the Commissioner's rules in determining that Plaintiff's complaints of pain were exaggerated. Evidently, Dr. Kuttner came to the same conclusion upon his examination of Plaintiff. The Court finds no basis for overturning the ALJ's credibility determination.

**Application of the Treating Physician Rule**

Plaintiff maintains that as a result of his failure to properly apply the treating physician rule, the ALJ subsequently failed to correctly apply the medical-vocational guidelines and find Plaintiff disabled because she is unable to perform a full range of sedentary work. Pl.'s Mem. of Law at 17.

The Second Circuit has cautioned that "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). With regard to the treating physician rule, the Court of Appeals has also stated that:

> SSA regulations advise claimants that "a treating source's opinion on the issue(s) of the *nature and severity of your impairment(s)*" will be given "controlling weight" if the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(d)(2) (emphasis added). *See also Shaw*, 221 F.3d at 134; *Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999) ("The ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.").

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).

In support of her position, Plaintiff makes the following argument: "Although the Judge indicated that he did provide 'significant weight' to the opinions of both physicians, the Residual Functional Capacity (RFC) that the Judge found does not fully incorporate the treating physicians' opinions." Pl.'s Mem. of Law at 11. That sentence, unfortunately, is the full extent of Plaintiff's argument in support of her contention that the ALJ failed to properly apply the treating physician rule. Plaintiff cites to no parts of the record on appeal, which consists of 305 pages, in support of that one-sentence conclusion. Immediately following that one sentence, Plaintiff starts a new argument: "that the VE was forced

to admit that the Plaintiff's past relevant work was a composite job performing at both the light and sedentary exertional levels . . . ." *Id.* In a subsequent sentence, Plaintiff contends that, "the treating physicians' opinions were fully supported by the Consultative Examination...." *Id.* Once again, however, Plaintiff's memorandum provides no citations to the 305 page record. Since Plaintiff is represented by counsel, the Court presumes that if evidence in support of the memorandum's conclusory arguments were to be found, counsel would have cited to it. The Court is not required to comb the record in search of evidence in support of Plaintiff's position. *See, e.g., Dietrich v. E.I. Du Pont de Nemours & Co.*, No. 02-CV-678S, 2004 WL 2202656, *9, n8 (W.D.N.Y. Sept. 28, 2004) (("[n]ot only has Plaintiff failed to provide any of his own medical evidence in support of his *prima facie* case, but he has also failed to include citations to the medical records Defendant included as exhibits in its moving papers. It is not this Court's duty, obligation or function to search the record for evidence supporting Plaintiff's case, and this Court declines to do so.").

### Application of the Medical-Vocational Guidelines

Plaintiff maintains that based upon her age, physical restrictions and prior work history that a proper application of the medical-vocational guidelines would result in a finding of disabled. The Court disagrees and finds that the ALJ was correct in his determination that Plaintiff could perform two of her past jobs identified by the VE, based on Plaintiff's own testimony, as a pharmaceutical packaging inspector and camera inspector. Plaintiff's contention that these positions were composite jobs, is contradicted by the SSR 82-61. In that regard, SSR 82-61 indicates that "composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT." Since the VE testified that both the pharmaceutical packaging inspector and camera inspector posi-

12

tions were, in fact, individually listed in the DOT, they are not composite jobs. Moreover,

the Social Security

> regulations provide that, if a claimant can return to her past relevant work, "either as the claimant actually performed it or as generally performed in the national economy," then the claimant is not disabled. 20 C.F.R. § 404.1560(b)(2). It is the claimant's burden to show that she is incapable of performing her "past relevant work," *see, e.g., Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986), which the regulations define as "work that [the claimant] ha [s] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it," 20 C.F.R. § 404.1560(b)(1). The test for actual performance of a claimant's past relevant work is "[w]hether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job *as ... she actually performed it.*" SSR 82–61, 1982 WL 31387, at *1 (1982) (emphasis added). The test for general performance of a claimant's past relevant work is "[w]hether the claimant retains the capacity to perform the functional demands and job duties of the job *as ordinarily required by employers throughout the national economy." Id.* at *2 (emphasis added). ALJs may rely on job descriptions contained in the DOT to define how jobs are "*usually* performed in the national economy." *Id.*

*Martell v. Commissioner of Social Sec.*, No. 2:12-CV-152, 2013 WL 1429459, *6 (D. Vt.

Mar. 22, 2013); *see also Delaney v. Astrue*, No. 09-CV-0251-A, 2010 WL 2629801, *4

W.D.N.Y. Jun. 28, 2010) ("Since the plaintiff retained essentially an unlimited RFC, she

retained the RFC to perform her past relevant work as she actually performed it and as it

is generally performed throughout the national economy and, therefore, she was not

disabled."); *Stanton v. Astrue*, No. 5:07-CV-0803 (LEK/VEB), 2009 WL 1940539, *9

(N.D.N.Y. Jul. 6, 2009) ("A claimant is not disabled if she can perform her past relevant

work, either as she actually performed it, or as it is generally performed in the national

economy."). Here the VE testified that Plaintiff could return to her past relevant work as a

pharmaceutical packaging inspector, as performed, or camera inspector, as performed.[8]

---

[8] While Plaintiff's counsel asked the VE the following hypothetical, "So, if an individual is restricted to less

**CONCLUSION**

For the foregoing reasons, the Court determines that the ALJ's decision is supported by substantial evidence in the Record and the Court affirms the judgment of the Commissioner of Social Security. 42 U.S.C. § 405(g). Therefore, Plaintiff's motion for judgment on the pleadings, ECF No. 9, is denied, and the Commissioner's cross-motion for judgment on the pleadings, ECF No. 12, is granted. The Clerk shall enter judgment for the Commissioner of Social Security and close this case.

IT IS SO ORDERED.

DATED:   April 9, 2014
         Rochester, New York

                    ENTER:          /s/ Charles J. Siragusa
                                    CHARLES J. SIRAGUSA
                                    United States District Judge

---

than occasional pushing and pulling, would that eliminate the positions of quality control inspector or the camera position" to which the VE responded, "My classification, yes," R. 51, there is no evidence in the Record to indicate that Plaintiff was limited to less than occasional pushing and pulling.